IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Taylor M.,[1] | ) |
|           **Plaintiff,** | ) ) )   Case No. 22-cv-05819 |
| v. | ) )   Honorable Beth W. Jantz |
| MARTIN J. O'MALLEY, **Acting Commissioner of Social Security,**[2] | ) ) ) |
|           **Defendant.** | ) ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Taylor M.'s application for Disability and Disability Insurance Benefits ("DIB"). The Parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's Motion for Summary Judgment (dkt. 12) is GRANTED and the Commissioner's Motion for Summary Judgment (dkt. 17) is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.
[2] Pursuant to Federal Rule of Civil Procedure 25(d), Martin J. O'Malley has been substituted for his predecessor.

## BACKGROUND

### I. Procedural History

On July 7, 2020, Plaintiff completed her application for disability and DIB, alleging disability beginning May 23, 2020. R. 15. Plaintiff's claims were denied initially, upon reconsideration, and in a May 27, 2022, decision that followed a hearing with an Administrative Law Judge ("ALJ"). R. 15. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. R. 1-6. Plaintiff now seeks review of the Commissioner's final decision denying her claims.

### II. The ALJ's Decision

The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2021, making the relevant period May 23, 2020, through December 31, 2021. R. 18. The ALJ analyzed Plaintiff's claims in accordance with the Social Security Administration's five-step sequential evaluation process. R. 18-31. The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity during the relevant period. R. 18. At step two, the ALJ concluded that Plaintiff had the following severe impairments: fibromyalgia; depression; and anxiety. R. 18-19. The ALJ concluded at step three that her impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's listings of impairments. R. 19-22. Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work except that she could: occasionally climb ramps and stairs, ladders, ropes, and scaffolds; occasionally stoop, kneel, crouch, and crawl; understand, remember, and carry out simple routine instructions and use judgment limited to simple work-related decisions; and frequently interact with the general public. R. 22-29. At step four, the ALJ found that Plaintiff had no past relevant work. R. 29. At

2

step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. R. 29-31. The ALJ then concluded that Plaintiff was not disabled under the Social Security Act. R. 31.

## DISCUSSION

I. **Legal Principles**

Under the Social Security Act, a person is disabled if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which they claim disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v.*

3

*Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837; *see also Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## II. The ALJ reversibly erred by failing to consider the combined impact of Plaintiff's impairments.

Among other arguments, Plaintiff argues that the ALJ reversibly erred by failing to assess and provide for the cumulative effect of Plaintiff's impairments in the RFC determination. Dkt. 12 at 7-11. After a review of the record and the briefs (dkt. 12; dkt. 18; dkt. 19) submitted by the Parties, the Court agrees with Plaintiff. The ALJ was required to consider the interaction of Plaintiff's physical and mental impairments, and to consider them in the aggregate, but failed to

4

do so. *See Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011) ("[A]n applicant's disabilities must be considered in the aggregate. Enough said."); *Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010) ("The judge's failure to consider the cumulative effect of impairments not totally disabling in themselves was an elementary error."). While the ALJ discussed Plaintiff's fibromyalgia and mental health impairments separately, she did not minimally articulate whether she assessed them together, despite evidence of their combined impact on Plaintiff.

Although Plaintiff is not arguing that her mental impairments met or equaled one of the listings, she is correct that the ALJ's failure to consider the combined impact of her physical and mental impairments began at step three.[3] Dkt. 12 at 7-8. At step three, the ALJ first considered Plaintiff's fibromyalgia and acknowledged that the criteria ask about whether there were "co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder…" R. 19-20. Despite this acknowledgement, which underscores that mental impairments often interact with fibromyalgia, the ALJ's only mention of Plaintiff's mental impairments in the step three fibromyalgia discussion was that Plaintiff "displayed no mental health deficits upon different mental status and memory assessments." R. 20. Even if this conclusion were true, the ALJ clearly believed that Plaintiff had *some* limitations arising out of her mental impairments, as the ALJ found that Plaintiff's depression and anxiety "significantly limit[ed] [her] ability to perform basic work activities." R. 18. The brief mention of normal mental status and memory assessments did not help explain how the ALJ considered whether Plaintiff's mental impairments interacted with Plaintiff's fibromyalgia. At step three, the ALJ went on to discuss whether Plaintiff's mental impairments met the criteria of the

---

[3] It is important to note the ALJ's failure at step three, because had she considered Plaintiff's impairments collectively at step three, that would suggest that she had considered them collectively in the RFC determination, as well.

mental listings and made no mention of Plaintiff's physical symptoms in doing so. R. 20-22. There is nothing in the ALJ's discussion at step three that leads the Court to believe that the ALJ considered Plaintiff's fibromyalgia in conjunction with her mental impairments.

The ALJ's RFC discussion was no different. She continued to assess Plaintiff's physical and mental impairments individually, even distinctly separating her analysis of them by paragraph. R. 24-25. The only time in the RFC determination that the ALJ even acknowledged that there may be an interaction between Plaintiff's mental and physical impairments was in her discussion of Plaintiff's fibromyalgia, where she cited to records that note "brain fog and difficulties understanding conversation." R. 25. These notes were quickly dismissed by the ALJ who stated, "Regardless, she reported no limitations to complete daily living activities, was perceived in no acute distress, and could move without problems…" R. 25. Again, even if the ALJ properly found that Plaintiff's "brain fog and difficulties understanding conversation" were outweighed by her daily activities, findings of no acute distress, and normal movement, there is no indication that the ALJ considered Plaintiff's mental impairments in conjunction with her fibromyalgia in determining Plaintiff's RFC limitations. It was important that the ALJ do so, because "[e]ven if each problem assessed separately were less serious than the evidence indicates, the combination of them might well be totally disabling." *Martinez*, 630 F.3d at 698. In other words, the combined impact of Plaintiff's mental and physical impairments might have resulted in greater RFC limitations, potentially rendering her disabled.

Further, ALJs are not permitted to ignore an entire line of evidence that is contrary to their ruling. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). But the ALJ did just that. In failing to assess Plaintiff's physical and mental impairments together, the ALJ ignored evidence that these impairments did interact with each other. The Court notes the following record evidence

of this interaction: Six months prior to her alleged onset date, Plaintiff saw her psychiatrist, Dr. Janeen Paul MD, who wrote that Plaintiff "experienced worsening pain, which impacts her mood significantly. She gets overwhelmed and feels like it's harder to deal with things." R. 331. Two months later, and four months prior to her alleged onset date, Plaintiff discussed her anxiety and sleep concerns alongside her other ongoing physical health issues with Dr. Paul. R. 333. In February of 2021, during the relevant period, Plaintiff reported to a consultative examiner that her pain impacted her ability to understand and concentrate. R. 405. In November of 2021, also during the relevant period, Plaintiff's treating psychiatrist, Dr. Muhammad Junaid MD filled out a Mental RFC Questionnaire and noted that "one of the constant stressors is chronic pain that drastically affects her mood." R. 530. In March of 2022, just three months after the relevant period, Plaintiff's treating pain specialist, Dr. Meghan Bhave MD, filled out a Fibromyalgia RFC Questionnaire and found that her pain and other symptoms would constantly impact Plaintiff's attention and concentration. R. 557. Plaintiff also testified that her mental health issues stemmed from her physical health. R. 48 ("I have generalized…depression. Most of it stems from the issues that I have with my physical health…I have anxiety about like how my day's going to go, how my pain is going to be. It's very overwhelming have [sic] to deal with the chronic illness every day."). While the ALJ may have cited to some of these records for other reasons, there is no indication that she considered them to the extent that they suggested an interplay between Plaintiff's mental and physical impairments, as she was required to do. *See Golembiewski*, 322 F.3d at 917.[4]

---

[4] The Commissioner points out that it is Plaintiff's burden to point to evidence that her conditions support specific limitations affecting her ability to work. Dkt. 18 at 7-8 (citing *Weaver v. Berryhill*, 746 F. App'x 574, 578-79 (7th Cir. 2018)). But Plaintiff met this burden by pointing to much of the cited evidence, which supports a conclusion that her mental and physical impairments collectively had a greater impact on her non-exertional abilities than they did individually. Dkt. 12 at 7-11. Had the ALJ considered the combined impact of Plaintiff's

Even under the deferential standard of review, the ALJ failed to minimally articulate whether she considered the aggregate impact that Plaintiff's physical and mental impairments might have had on her ability to work. *See Lynette C. v. Saul*, No. 18-CV-7482, 2019 WL 5420081, at *5 (N.D. Ill. Oct. 23, 2019) ("[A]n ALJ must minimally articulate his reasons for crediting or rejecting evidence of disability….Key to the…analysis is the principle that an ALJ is required to consider the impairments both singly and in concert with one another when assessing a claimant's RFC.") (internal citations and quotation marks omitted). Her failure to do so was a "critical error." *Aquino v. Colvin*, No. 12 C 4557, 2014 WL 7190890, at *12 (N.D. Ill. Dec. 16, 2014). Without explanation of how she considered Plaintiff's impairments together, the Court cannot meaningfully review the ALJ's decision under the substantial evidence standard. *See Lynette C.*, 2019 WL 5420081, at *5 ("By merely stating his conclusion, the ALJ prevents the Court from carrying out a meaningful review as to whether the ALJ's analysis of Plaintiff's combined impairments meets the substantial evidence standard."); *Rebecca B. v. O'Malley*, No. 23 C 295, 2024 WL 989296, at *4 (N.D. Ill. Mar. 7, 2024) ("Without an explanation from the ALJ of her consideration of [plaintiff]'s mental impairments in combination with her other severe and non-severe impairments in the RFC, the Court cannot determine whether the ALJ's RFC decision is supported by substantial evidence."); *see also Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014) ("Without any evidence that the ALJ considered [plaintiff]'s impairments in concert, we cannot say that the ALJ built the required 'accurate and logical bridge' between the evidence and her conclusion.") (citation omitted). Because this error alone warrants remand, the Court does not reach Plaintiff's additional arguments.

---

impairments, she may have determined that Plaintiff required more restrictive non-exertional limitations.

8

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (dkt. 12) is GRANTED and the Commissioner's Motion for Summary Judgment (dkt. 17) is DENIED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date: July 18, 2024

BETH W. JANTZ
United States Magistrate Judge